IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
---

MARYAM E. MUHAMMAD,

                Plaintiff,                        OPINION and ORDER

v.

                                                 15-cv-41-wmc

BEVERLY LOUIS *et al.*,

                Defendants.

---

On July 12, 2016, this court granted *pro se* plaintiff Maryam E. Muhammad leave to proceed on claims that several employees of the City of Madison Community Development Authority ("CDA") terminated her housing benefits in violation of her due process rights under the U.S. Constitution and federal law. Specifically, Muhammad claims that CDA employees Beverly Louis and Tom Conrad failed to provide her adequate notice of her rights and scheduled her informal termination hearing on a date she could not attend. Before the court is plaintiff's motion to amend (dkt. #49) and defendants' motion for summary judgment (dkt. #42). For the reasons that follow, the court will deny plaintiff's request to amend and grant defendants' motion for summary judgment, closing this case.

UNDISPUTED FACTS[1]

The CDA contracts with the United States Department of Housing and Urban Development ("HUD") to operate a rent assistance program in the City of Madison pursuant

---

[1] The plaintiff failed to respond properly to defendants' proposed findings of fact. Thus, for the most part, defendants' facts are adopted consistent with Federal Rule of Civil Procedure 56(e)(2) and this court's standing summary judgment procedure. (Dkt. #39.) Nevertheless, because plaintiff includes a few factual averments in her opposition brief that are material to her claims, which she signed and had notarized, the court has taken those statements into account. *See Owens v. Hinsley*, 635 F.3d 950,

to Section 8 of the United States Housing Act of 1937, 42 U.S.C. § 1437 *et seq.* ("Section 8 housing"). Applicants apply for Section 8 housing assistance, and if accepted, they receive housing vouchers that permit the holder to search for a privately owned unit within the City with the rent negotiated by the CDA.

During the relevant time period, plaintiff Maryam Muhammad was receiving Section 8 housing assistance. Defendant Tom Conrad is the Interim Director and Housing Assistance Supervisor of the CDA. From 2007 to June of 2016, he was the CDA's Section 8 supervisor to whom defendant Beverly Louis reported as a housing specialist. While Louis acted at Conrad's direction, he was the final decision-maker with respect to Muhammad's housing assistance voucher.

On August 30, 2013, the CDA served Muhammad with written notice terminating her Section 8 housing assistance voucher, effective February 28, 2014. That notice explained Muhammad violated CDA program rules by failing to report income from Unemployment Compensation. As provided by the CDA rules, Muhammad responded by requesting an informal hearing.

Conrad then sent Muhammad a follow-up letter, dated September 19, 2013, scheduling her hearing for October 28, 2013, at 10:30 a.m. Although Conrad met with Muhammad at that date and time, the two agreed the hearing itself would be rescheduled to November 20, 2013, at 1:30 p.m., because (1) Muhammad objected to the informal hearing officer and (2) Conrad wanted to assure the CDA had a city attorney present at the hearing. Even then, the hearing did not go forward as scheduled.

---

954 (7th Cir. 2011) (*pro se* prisoner who "verified his response in opposition to the defendants' motion for summary judgment" had done enough to "make his allegations admissible").

Instead, on December 4, 2013, Conrad approved a Repayment Agreement ("Agreement") in which Muhammad acknowledged owing the CDA a total of $5,184.00 for the unreported compensation benefits and agreed to make monthly repayments in the amount of $432.00. Despite this agreement, Muhammad failed to make payments timely and informed Conrad that she would not be doing so going forward either. Construing this as a breach of their Agreement, Conrad again initiated the process to terminate Muhammad's housing assistance voucher.

To that end, the CDA sent Muhammad written notice on January 21, 2014, terminating her housing assistance voucher effective February 28, 2014 ("Notice"). While Louis drafted the Notice at Conrad's direction, he made the final decision to terminate the voucher and issued Muhammad the Notice. This three-page Notice provided Muhammad with several pieces of information. First, the Notice explained that Muhammad had violated *three* CDA policies: (1) failure to report Unemployment Compensation in violation of 24 C.F.R. § 982.551(b)(1),(2), Voucher 4.B.1; (2) failure to supply true and complete information in violation of 24 C.F.R. § 982.551(b)(4), Voucher 4.C; and (3) breach of the Agreement in violation of 24 C.F.R. § 982.552(c)(vii). Second, the Notice outlined the events comprising the violations, focusing on her failure to make the monthly payments under the Agreement. Third, under the heading "Appeal/Request for Informal Hearing," the Notice stated that if Muhammad wanted to appeal the decision, she "must submit a written request for an Informal Hearing to CDA at the address above -- no later than 4:30 p.m. on February 4, 2014." (Ex. E (dkt. #45-5) at 2.) Fourth, the Notice explained that once the informal hearing is scheduled, it "will not be rescheduled unless you can show good cause as described

3

in Section 8 Administrative Plan, Chapter 16, Part III, or unless you require rescheduling as a reasonable accommodation for a disability."

In addition, the Notice listed Muhammad's rights generally, which included the rights to: (1) an informal private hearing not open to the public; (2) an explanation of the basis for the CDA's decision to terminate assistance; (3) be represented by an attorney at her expense or by another person of her choice; (4) examine, at her expense, all CDA documents that are the basis of the CDA's action; (5) a copy of any criminal record that is the basis for termination; and (6) a copy of the CDA's procedures. Finally, the Notice listed Muhammad's rights at the informal hearing, which included the rights to present information and witnesses, present written or oral objections to the CDA's evidence, hear evidence against her and cross-examine CDA witnesses, request CDA staff to be available to answer questions, receive a transcript of the Informal Hearing at her expense, and a written decision.

In an email dated January 22, 2014, Muhammad again requested an informal hearing. She also dropped off a hard copy of her request at the CDA. On January 31, 2014, Conrad sent Muhammad a written notice by both regular mail and email, scheduling the informal hearing for February 12, 2014. The notice also stated that Muhammad's failure to appear within fifteen minutes of the scheduled time could result in her forfeiting the right to an informal hearing. The same day Muhammad received Conrad's email, January 31, she responded that the February 12 date would not work for the informal hearing, nor would any other date the entire month of February, and that she would not be available until mid-March. (Ex. H (dkt. #45-8).)

On February 2, 2014, Muhammad also emailed Conrad that she needed additional time, both to get an attorney and because she had a disability. (*Id.*) Muhammad then

4

followed up on February 5, 2014, by providing the CDA with a letter from her physician, Dr. Weathers, who similarly asked for a postponement of the February 12 informal hearing because Muhammad "has many chronic medical diseases and spends much time on her medical care." (Ex. J (dkt. #45-10).) Muhammad had also written on the bottom of the February 5th letter that she was requesting a 90-day postponement of the Informal hearing.

Conrad then sent Muhammad an email on February 5, 2014, which acknowledged Muhammad's request for a postponement because of her disability, as well as her submission of Dr. Weathers' letter that included her handwritten, 90-day postponement request. Conrad also wrote that he had contacted Dr. Weathers to ask for clarification about Muhammad's disability and need for accommodation, but that Dr. Weathers had not yet responded to his request for information. Accordingly, as of February 5, Conrad wrote that the hearing date remained February 12, although the CDA would attempt to follow up on her requested accommodation and would notify her in writing whether her request was approved or denied. However, on February 11, Conrad sent Muhammad a letter informing her that he would be postponing the hearing for approximately one month because the CDA had been unable to finish evaluating her accommodation request. In particular, Conrad explained he had not been able to discuss with Dr. Weathers the specifics of the accommodation Muhammad needed.

Conrad followed up via mail and email on February 24, 2014, with written notice that the informal hearing was reset for March 19 at 9:30 a.m. Muhammad immediately called Conrad on the afternoon of February 24th, explaining to him that she had a doctor's appointment on March 19 and could not attend. However, she refused to provide Conrad with documentation confirming her appointment; rather, she told Conrad that he should

communicate directly with her attorney, Mr. Jae Lee, in the future. Later that same afternoon, Muhammad also sent Conrad a follow-up email informing the CDA that she was consulting with Attorney Lee and that a morning hearing date would not work for her.

A few days later, on February 27, Conrad sent a hearing notice to Attorney Lee by email and regular mail as instructed, which indicated that the informal hearing had been rescheduled for March 18, 2014, at 1:30 pm. As before, this notice also stated that her failure to appear could result in Muhammad forfeiting her right to an informal hearing. On February 28, Muhammad sent Conrad another email, now telling him that Lee had not yet advised whether he was taking her case and requesting that the hearing be "set aside" until Muhammad had actually secured counsel. Muhammad added that Lee would be letting her know whether he would be taking her case "on or about March 3, 2014."

By March 8, 2014, Conrad had still not heard from Lee. Accordingly, he sent Muhammad an email that day, along with a copy of the notice as a reminder that the informal hearing remained scheduled for March 18 at 1:30 pm. The email further explained that because Conrad had not heard back from Muhammad about whether Lee would be representing her, and because the CDA had already been flexible over the previous six months regarding scheduling the hearing, the CDA would not postpone the hearing again. Conrad sent this email and the copy of the March 18 hearing notice to Muhammad using the same address he had used previously, but received no message back.

Muhammad did not attend the informal hearing on March 18, 2014.[2] The Hearing Officer waited more than fifteen minutes before leaving the hearing location. On March 21,

---

[2] Muhammad now claims that she missed the March 18 hearing because she had a doctor's appointment, but does not claim that she gave *any* advance notice of this purported conflict to the

6

2014, the Hearing Officer issued a decision concluding that: (1) Muhammad failed to appear; (2) she did not show good cause for failing to appear under 24 C.F.R. § 982.54(d) and CDA policy; and (3) she thus forfeited her right to an informal hearing. Consistent with that decision, Conrad sent Muhammad written notice that same day formally terminating her housing assistance voucher and stating that the CDA would no longer be providing her with a rent subsidy. Conrad also included a copy of the Hearing Officer's decision, advising Muhammad of her right to request a review of that decision by filing an action in Circuit Court within thirty days.

On March 28, 2014, Muhammad filed a petition in Dane County Circuit Court, Case No. 14-cv-947, appealing the CDA's decision. That court dismissed her petition on July 31, 2014. Muhammad appealed, which the Wisconsin Court of Appeals dismissed on May 15, 2015. That dismissal became final on June 15, 2015. Wis. Stat. § 808.10.

Almost 90 days after the circuit court's dismissal of her petition, on or around October 24, 2014, Muhammad forwarded a letter from Dr. Weathers' office to the CDA. The letter was also dated October 24, 2014, and requested that Muhammad not be penalized for missing the hearing on "March 18 and 19, 2014," because she had a medical appointment. Muhammad provides no details about when the appointment was scheduled or to whom at the CDA she had directed the letter. Obtaining no relief, Muhammad filed this lawsuit on January 20, 2015.

---

DCA or Hearing Officer either before or after the hearing.

OPINION

I.  **Plaintiff's motion to amend (dkt. #49)**

In response to defendants' motion for summary judgment, plaintiff filed a motion to amend, seeking leave to substitute the "Dane County Health and Human Family Services and Public Assistance Collection Unit" for the John Doe defendant described in her original complaint. Leave to amend a pleading is to be "freely given when justice so requires." Fed. R. Civ. P. 15(a). "Even so, leave to amend is not automatically granted, and may be properly denied at the district court's discretion for reasons including undue delay, the movant's bad faith, and undue prejudice to the opposing party." *Crest Hill Land Dev., LLC v. City of Joliet*, 396 F.3d 801, 804 (7th Cir. 2005) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Furthermore, requests to amend may be denied on the basis that the amended pleading would ultimately be futile. *See CogniTest Corp. v. Riverside Pub. Co.*, 107 F.3d 493, 499 (7th Cir. 1997). Muhammad's motion must be denied, both because it was filed too late and would be futile.

Here, Muhammad did not seek leave to amend her complaint until March 1, 2018, well after the January 26, 2018, dispositive motion deadline. She offers no meaningful explanation for this long delay in seeking leave. Moreover, adding new defendants so late in the process, as trial approaches, prejudices all of named defendants, who appear to have been diligently preparing this case and meeting all of the court's deadlines. Most importantly, Muhammad's proposed amended complaint still does not actually identify the individuals involved, and the Dane County "unit" she describes is not a suable defendant under § 1983. *See Whiting v. Marathon Cty. Sheriff's Dep't*, 382 F.3d 700, 704 (7th Cir. 2004) (sheriff's

department is not a "legal entity separable from the county government" and, thus, is not subject to suit under § 1983). Accordingly, the motion to amend will be denied.

II.   Defendant's motion for summary judgment (dkt. #42)

Defendants seek summary judgment in their favor on the merits, as well as on qualified immunity grounds. As noted at screening, the Due Process Clause of the Fourteenth Amendment in part prohibits a state from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "A procedural due process claim requires the plaintiff to show (1) that she was deprived of a protected liberty or property interest, and (2) that she did not receive the process that was due to justify the deprivation of that interest." *Armato v. Grounds*, 766 F.3d 713, 721–22 (7th Cir. 2014). *See also Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010) ("Accordingly, a plaintiff asserting a procedural due process claim must have a protected property interest in that which he claims to have been denied without due process.")

In particular, recipients of Section 8 housing benefits are widely acknowledged to have a property interest in continued receipt of these benefits. *See Khan*, 630 F.3d at 527 ("participants who have been issued a certification for rent assistance have a property interest in the assistance"). Thus, participants in a public housing voucher program "must be heard before being expelled from the program." *Id.* (citing *Simmons v. Drew*, 716 F.2d 1160, 1162 (7th Cir. 1983)). In *Goldberg v. Kelly*, 397 U.S. 254 (1970), the Supreme Court similarly held that due process requires recipients of welfare benefits to be provided "timely and adequate notice detailing the reasons for a proposed termination," as well as a pre-termination evidentiary hearing with certain procedural safeguards. *Id*. at 266-68.

Additionally, federal regulations require that public housing authorities provide the following process before terminating a voucher recipient's rent assistance: (1) notice of the reason(s) for the decision, 24 C.F.R. § 982.554(a); (2) an opportunity for informal review, § 982.554(b); (3) prompt written notice that the recipient may request an informal hearing, §§ 982.555(a), (c)(2); and (4) the opportunity to review relevant documents before the hearing and to present evidence at the hearing, §§ 982.555(e)(2),(5). Not only must public housing authorities comply with these regulations, 24 C.F.R. § 982.52(a), but if sufficiently specific and definite, the regulations may qualify as enforceable rights under § 1983. *See Wright v. City of Roanoke Redevelopment & Hous. Auth.*, 479 U.S. 418, 431 (1987) (allowing tenants to use § 1983 to recover past overcharges violating rent-ceiling provision of Public Housing Act).

### A. Due Process

Muhammad does not challenge the sufficiency of the notices she received, and the court is satisfied that the notices provided her with sufficient information about the bases for her termination and her rights going forward. Instead, Muhammad focuses her argument on being denied an opportunity for an informal hearing because she had a doctor's appointment on March 18, 2014. Even accepting as true that Muhammad actually did have a doctor's appointment that conflicted with the noticed hearing on March 18, and that this constituted good cause for postponement, however, there is *no* evidence suggesting that defendants Conrad or Louis had reason to know about this conflict and declined to reschedule. To the contrary, the record of the communications between Conrad and Muhammad establish that Conrad (1) previously found good cause for postponements of both the February 12 and

March 19 hearing dates, (2) attempted to ferret out whether Muhammad needed a reasonable accommodation due to a disability, and (3) gave Muhammad time to secure counsel for the hearing. While Conrad declined to change it a third time after receiving Muhammad's February 28 email, he did so after reasonably concluding that there was no reason to postpone it further, or so any reasonable trier of fact would have to find on this record.

To be sure, as of February 28, Muhammad had reported to Conrad that she was having difficulties securing counsel to represent her, and she had asked for an indefinite postponement of the hearing, but Muhammad also represented that she would know whether Lee would represent her by March 3. It was some five days later, on March 8, when Conrad had still heard nothing from Muhammad (or her possible counsel Lee) that Conrad decided to proceed with the existing March 18 informal hearing date. And even then, Conrad again gave Muhammad notice that the CDA had postponed the hearing previously, yet Muhammad persisted in failing to articulate a conflict or seek an extension of the March 18 hearing date. Given that Muhammad submitted no averments or evidence suggesting that Conrad had other information before him, it would be unreasonable for a trier of fact to conclude that Muhammad had good cause to postpone the twice rescheduled hearing at that point.

Importantly, Muhammad does *not* claim that she informed Conrad or anyone else at the CDA that she had a doctor's appointment at the same time on March 18 when the informal hearing had been set. In fact, the only evidence Muhammad points to in support of her position is the October 24, 2014, letter from Dr. Weathers' office, a missive created *some seven months after* the scheduled hearing. Obviously, that untimely letter does nothing to support an inference that defendants Conrad or Louis ignored good cause to reschedule the March 18th hearing. Setting aside the fact that Muhammad did not press this issue during

11

the course of her petition before the CDA or Wisconsin courts, this letter does not support an inference that Conrad, Louis or anyone else at the CDA *knew* that Muhammad had a conflicting doctor's appointment *at the time of the informal hearing*. As Conrad and Louis concede, the CDA may have received the letter at some point after October 24, 2014, but by then the deadline for the informal hearing had long come and gone. Indeed, Muhammad was already appealing the original decision at that point. Nor does the fact that the CDA received the letter in October of 2014 support a finding that when Conrad maintained the March 18 informal hearing date, Muhammad had shown good cause to reschedule it. Accordingly, on this record, a reasonable juror could not conclude that Conrad or Louis violated Muhammad's due process rights or the federal housing regulations.

### B. Qualified Immunity

To the extent the October 2014 letter left any room for argument, defendants are both entitled to qualified immunity on this record. Qualified immunity protects government employees from liability for civil damages for actions taken within the scope of their employment unless their conduct violates "clearly established . . . constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). *See also Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). "In determining whether a constitutional right has been clearly established, it is unnecessary for the particular violation in question to have been previously held unlawful." *Lewis v. McLean*, 864 F.3d 556, 563 (7th Cir. 2017) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Instead, the question is whether the "contours of the right [are] sufficiently

clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640.

First, defendants argue that Louis is entitled to qualified immunity because of her very limited role in terminating Muhammad's housing voucher. They have a point. While Louis prepared the initial termination notice that was sent to Muhammad, Muhammad does not dispute that Louis was not involved in any other capacity in the termination of her housing voucher. Given that Louis was only involved insofar as she prepared a notice that *Conrad* approved and pursued, and that the only information Louis possessed was that Muhammad was not in compliance with CDA rules regarding participation in the Section 8 program, her actions did not violate Muhammad's clearly established rights. *See Sharrock v. Fayetteville Metro. Hous. Auth.*, No. 5:14-cv-871-BO, 2015 WL 6159021, at *4 (E.D.N.C. Oct. 19, 2015) (defendants only tangentially related to termination of Section 8 eligibility entitled to qualified immunity).

Conrad is also entitled to qualified immunity because his actions were objectively reasonable. *Olivares v. Ann Arbor Hous. Comm'n*, No. 15-11630, 2015 WL 7733453, at *4 (E.D. Mich. Dec. 1, 2015) (acting in accordance with applicable rules and regulations warrants qualified immunity protection). On this record, there is no dispute that Conrad had already rescheduled the informal hearing date *twice*, both times after learning that Muhammad (or a hoped for representative) had an actual conflict, but held the hearing date firm when Muhammad requested a seemingly endless postponement. Accordingly, Conrad did not violate Muhammad's clearly established right to receive an opportunity to attend the Informal Hearing.

ORDER

IT IS ORDERED that:

1. Plaintiff Maryam Muhammed's motion to amend (dkt. #49) is DENIED.

2. Defendants' motion for summary judgment (dkt. #42) is GRANTED.

3. The clerk of court is DIRECTED to enter judgment in defendants' favor and close this case.

Entered this 5th day of July, 2018.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge